MORTON'S OF CHICAGO, Appellant and Cross-Appellee, v. THE INDUSTRIAL COMMISSION *et al.* (Jane Rooch, Appellee and Cross-Appellant).

First District (Illinois Workers' Compensation Commission Division)
No. 1—05—2461WC

Opinion filed July 12, 2006.

Spiegel & Cahill, P.C., of Hinsdale (Miles P. Cahill and Mitzi J. Heniff, of counsel), for appellant.

Lewis, Davidson & Hetherington, Ltd., of Chicago (Peter C. Bobber and M. Ginn, of counsel), for appellee.

JUSTICE HOFFMAN delivered the opinion of the court:

Morton's of Chicago (Morton's) appeals from an order of the circuit court of Cook County confirming a decision of the Industrial Commission (Commission), now known as the Illinois Workers' Compensation Commission (see 820 ILCS 305/12 (West 2004)), which awarded the claimant, Jane Rooch, benefits in connection with her application for adjustment of claim under the Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 1998)). The claimant has cross-appealed arguing that the circuit court lacked jurisdiction to review the Commission's decision. For the reasons that follow, we affirm the judgment of the circuit court.

The following facts relevant to our resolution of this appeal are taken from the evidence presented at the arbitration hearing.

The claimant testified that, on April 24, 1999, while working as a waitress at Morton's, she slipped on the kitchen floor and fell on her left knee. The claimant was taken by ambulance to Northwestern Hospital's emergency room.

While the claimant was at the emergency room, X rays were taken of her left knee which showed a small joint effusion but no evidence of a fracture or dislocation. According to the emergency room records, the claimant was diagnosed with a knee strain. She was prescribed Dilaudid, given crutches and a knee immobilizer cast, referred to an orthopedic specialist, and discharged.

On April 28, 1999, the claimant sought further treatment with Dr. Mark Bowen, an orthopedic surgeon. When Dr. Bowen performed a physical examination of the claimant, he observed significant patella swelling and tenderness, and diagnosed the claimant with an acute dislocation of her kneecap. Dr. Bowen ordered an MRI of the claimant's left knee, which revealed a mild lateral subluxation of the patella, an edema and contusion of the lateral femoral condyle and patella, and a prominent joint effusion. After physical therapy proved ineffective, Dr. Bowen recommended arthroscopy.

On August 10, 1999, the claimant underwent arthroscopic surgery on her left knee, consisting of a debriding and realignment of her kneecap. Following the surgery, the claimant received additional physical therapy.

In December of 1999, Dr. Bowen informed the claimant that she would be physically unable to resume her former job as a waitress. Prior to April 24, 1999, the claimant had received a bachelor's degree and a certificate in paralegal studies, but had not pursued a career as a paralegal because she was able to earn more money at Morton's. In March of 2000, the claimant began a self-directed job search. She obtained four job offers and accepted the position with the highest salary, a paralegal job at a Chicago law firm paying $34,000 a year. She began working as a paralegal on May 22, 2000.

The claimant testified that when she was employed at Morton's she worked similar shifts, was given similar assignments, and had the same seniority as two other servers at Morton's, Shannon Weimerskirsh and Ralph Lotspeich. In 1998, the claimant earned $44,414.64, Lotspeich earned $44,384.23, and Weimerskirch earned $43,781.79. In 2000, Lotspeich earned $50,080.68 and Weimerskirch earned $54,549.89. Rhoda Bogardus, a server at Morton's, testified that Weimerskirsch also worked as a bartender. The yearly wages for various other unnamed servers at Morton's was also received into evidence.

Following the hearing, the arbitrator issued a decision finding that the claimant sustained accidental injuries on April 24, 1999, arising

out of and in the scope of her employment with Morton's and that her current condition of ill-being was causally related to the injuries she sustained on April 24, 1999. However, the arbitrator denied the claimant wage differential benefits, finding that she failed to prove the amount that she would have been able to earn in full performance of her former employment duties. The arbitrator awarded the claimant temporary total disability (TTD) benefits for a period of $53^6/7$ weeks, permanent partial disability (PPD) benefits for a period of 120 weeks by reason of the 60% loss of use of her left leg, and ordered Morton's to pay $1,065 for medical expenses incurred by the claimant.

Both the claimant and Morton's filed petitions with the Commission seeking a review of the arbitrator's decision. On August 27, 2003, oral arguments were held before Commissioners Kinnaman, Rink, and Stevenson. Prior to the issuance of a decision, Commissioner Stevenson left the Commission. The Commission issued a decision on October 7, 2003, signed by Commissioners Kinnaman and Rink. That decision also contained a special concurrence by Commissioner DeMunno in which he noted that the Commission's internal worksheet showed that Commissioner Stevenson dissented from the majority of the panel.

In its October 7, 2003, decision, the Commission modified the decision of the arbitrator, finding that the claimant had sufficiently proven that she was entitled to a wage differential of $191.20 a week commencing on May 22, 2000. In reaching this conclusion, the Commission found, relying on Lotspeich's and Weimerskirch's wage increases, that the claimant's wages as a waitress would have increased 13% from 1998 to 2000. The Commission also awarded the claimant TTD benefits for $53^3/7$ weeks and ordered Morton's to pay $1,062.71 for medical expenses incurred by the claimant.

The claimant and Morton's both filed petitions for recall under section 19(f) of the Act (820 ILCS 305/19(f) (West 2002)), alleging typographical and computational errors in the Commission's decision. The Commission then issued a corrected decision on December 22, 2003, signed by Commissioners Kinnaman and Rink and containing the identical special concurring opinion by Commissioner DeMunno. In its corrected decision, the Commission increased the claimant's wage differential benefits to $227.31 a week because of a miscalculation in the claimant's weekly wages as a paralegal. In calculating the corrected wage differential benefits, the Commission again relied upon a 13% increase in the claimant's wages if she would have continued to work as a waitress at Morton's.

After the claimant filed a second petition for recall, the Commission issued another corrected decision on May 26, 2004. By the time that the second corrected decision issued, Commissioner Kinnaman

had also left the Commission. The second corrected decision was signed by Commissioner Rink and contained special concurrences by Commissioners DeMunno and Pigot. The second corrected decision did not modify the claimant's wage differential benefits.

Morton's filed a petition for judicial review of the Commission's decision in the circuit court of Cook County. The claimant filed a motion to dismiss, arguing that the court lacked subject-matter jurisdiction because Morton's had not filed an appropriate bond. The circuit court denied the motion to dismiss and confirmed the Commission's decision. This appeal and cross-appeal followed.

Initially, we address the claimant's cross-appeal. She argues that the circuit court lacked subject-matter jurisdiction over Morton's petition for judicial review because Morton's failed to file a bond which complied with the requirements set forth in section 19(f) of the Act.

The bond Morton's filed with the clerk of the circuit court of Cook County states that the Commission rendered an award for the claimant in the amount of $32,341.46 and a continuing wage differential of $227.31 a week commencing on May 22, 2000. The bond also states that liability thereon is limited to $75,000. The claimant asserts that Morton's bond is defective because it does not contain a provision that, if the review is not successfully prosecuted, Morton's will be required to pay the award and the costs of the proceedings.[1]

■ Section 19(f) of the Act sets forth the requirements for filing a petition for judicial review of a decision rendered by the Commission. This section, in relevant part, provides:

> "No *** summons shall issue unless the one against whom the Commission shall have rendered an award for the payment of money shall upon the filing of his written request for such summons file with the clerk of the court a bond conditioned that if he shall not successfully prosecute the review, he will pay the award and the costs of the proceedings in the courts." 820 ILCS 305/19(f)(2) (West 2002).

■ Contrary to the claimant's arguments, however, the absence of an undertaking to pay the award and costs does not render Morton's bond ineffective. When a bond is required by statute, the statutorily mandated terms are read into the bond, regardless of whether the

---

[1]In its reply brief, Morton's states that it used the clerk of the circuit court of Cook County's bond form for workers' compensation cases. We note that this form uses the outdated language that "[a] writ of certiorari has been issued by this court to review the award" and does not contain a provision requiring that the award and costs of the proceedings in the courts be paid if the review is not successfully prosecuted. It would be preferable if the clerk updated the form.

bond actually contains those terms. *Rosewood Corp. v. Transamerica Insurance Co.*, 57 Ill. 2d 247, 254, 311 N.E.2d 673 (1974); see also Restatement (Third) of Suretyship & Guaranty § 71 (1996). Accordingly, the provision that, upon an unsuccessful review, Morton's is required to pay the award plus costs is incorporated into Morton's bond, as a matter of law. We conclude, therefore, that Morton's bond satisfied the requirements of section 19(f), and the circuit court correctly denied the claimant's motion to dismiss.

In its appeal, Morton's argues that the Commission erred in awarding the claimant wage differential benefits. It asserts that the Commission relied upon speculation and conjecture in determining that the claimant's salary as a waitress would have increased 13% from 1998 to 2000. We disagree.

■ An employee who, as a result of an accidental injury, becomes partially incapacitated and cannot pursue his or her "usual and customary line of employment" is entitled to receive a wage differential benefit equal to 66²/₃% of the difference between the average amount the employee would have been able to earn in the occupation in which he or she was engaged at the time of the injury and the average amount which he or she is able to earn in a suitable employment after the injury. 820 ILCS 305/8(d)(1) (West 2002). The wage differential benefit is based on the amount the employee would have been able to earn at the time of the arbitration hearing, not the amount he or she was actually earning at the time of the injury. *Greaney v. Industrial Comm'n*, 358 Ill. App. 3d 1002, 1022, 832 N.E.2d 331 (2005).

To qualify for a wage differential award, a claimant must prove (1) partial incapacity preventing her from pursuing her "usual and customary line of employment" and (2) an impairment of earnings. 820 ILCS 305/8(d)(1) (West 2002); *Smith v. Industrial Comm'n*, 308 Ill. App. 3d 260, 265, 719 N.E.2d 329 (1999). Whether a claimant has presented sufficient evidence to establish each element is a question of fact to be resolved by the Commission, whose resolution of the matter will not be reversed on review unless it is against the manifest weight of the evidence. *Radaszewski v. Industrial Comm'n*, 306 Ill. App. 3d 186, 192, 713 N.E.2d 625 (1999). In order for a finding of fact made by the Commission to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *Radaszewski*, 306 Ill. App. 3d at 192.

Morton's has made no argument addressed to the claimant's incapacity; rather, its claim of error is addressed solely to the question of whether the claimant sustained her burden of proving an impairment of earnings. The claimant testified that she worked similar shifts,

was given similar assignments, and had the same seniority as Lotspeich and Weimerskirch. Although Weimerskirch also worked as a bartender, the claimant's testimony that she and Lotspeich were similarly situated employees was unrebutted. Additionally, in 1998, the claimant earned $44,414.64 and Lotspeich earned $44,384.23, a difference of only $30.41. The small variance in the claimant's and Lotspeich's 1998 earnings corroborates the claimant's testimony that she and Lotspeich were similarly situated employees at Morton's.

Lotspeich earned $44,384.23 in 1998 and $50,080.68 in 2000, an increase of approximately 13%.[2] Additionally, the salary information for the various unnamed Mortion's servers that was received into evidence includes 10 servers that reported earnings in both 1998 and 2000. The wages for these servers rose an average of 14% from 1998 to 2000.[3]

■ Based on Lotspeich's wage increase and the average wage increase for servers at Morton's, we conclude that the Commission could reasonably infer that the claimant's salary would have increased 13% from 1998 to 2000. Accordingly, the Commission's decision to award the claimant wage differential benefits was not based upon conjecture or speculation and is not against the manifest weight of the evidence.

■ Next, Morton's argues that the Commission was required to produce a copy of its internal worksheet created after oral arguments were held on August 27, 2003. It asserts that, without this worksheet, it cannot be determined whether the claimant's wage differential benefits were approved by the commissioners who participated in the oral arguments.

Section 19(e) of the Act requires that, when oral arguments are requested, the Commission's determination must be approved by a majority of the commissioners present at the hearing. 820 ILCS 305/ 19(e) (West 2002). However, ministerial acts, such as the writing, filing, and distributing of the Commission's decision, need not be performed by the same commissioners who participated in the oral

---

[2]In its reply brief, Morton's contends that Lotspeich's wages only increased 11% from 1998 to 2000. Morton's calculations, however, are incorrect. To calculate the percentage increase or decrease, the original amount is subtracted from the new amount, and the result is then divided by the original amount. R. Carman & M. Carman, Quick Arithmetic: A Self-Teaching Guide 231-32 (3d ed. 2001). Applying this formula to Lotspeich's 1998 and 2000 earnings, the percentage increase in his wages equals 12.8%, not 11%.

[3]Morton's contends that the average percentage increase for the 10 servers was 6.2%. However, Morton's calculations are again incorrect, and the wages for the 10 servers increased an average of 14% from 1998 to 2000.

arguments. *Zeigler v. Industrial Comm'n*, 51 Ill. 2d 137, 142, 281 N.E.2d 342 (1972).

Even without the Commission's worksheet, the record conclusively shows that the Commission's determination regarding the claimant's wage differential benefits was approved by a majority of the commissioners present at the oral arguments. The Commission's initial decision was signed by two of the commissioners who participated in the oral arguments, Commissioners Kinnaman and Rink. Although this decision also contained a special concurring opinion by Commissioner DeMunno in which he noted that Commissioner Stevenson had dissented, the determination to award the claimant wage differential benefits, as demonstrated by the signatures of Commissioners Kinnaman and Rink on the initial decision, was approved by the majority of the panel who participated in the oral arguments. After the claimant and Morton's filed petitions for recall pursuant to section 19(f) of the Act, the Commission issued two corrected decisions. When the second corrected decision was issued, Commissioner Kinnaman had also left the Commission, and, consequently, a majority of the original panel members did not sign the Commission's second corrected decision. However, the second corrected decision only contains typographical and computational corrections; purely ministerial acts. The actual determination to affirm, reverse, or modify the arbitrator's findings regarding wage differential benefits is contained in the Commission's initial decision. *Cf. McDuffee v. Industrial Comm'n*, 222 Ill. App. 3d 105, 110, 583 N.E.2d 598 (1991) (the merits of the case may not be reviewed through a petition for recall filed under section 19(f) of the Act). Further, the amount of wage differential benefits awarded to the claimant in the second corrected decision is identical to those awarded in the first corrected decision. As Commissioners Kinnaman and Rink signed the first corrected decision, it is clear that a majority of the commissioners who participated in the oral arguments also approved the final amount of wage differential benefits awarded to the claimant.

Having found that the Commission's determination to award wage differential benefits was approved by the majority the commissioners present at the oral arguments, the production of the Commission's worksheet would serve no valid purpose. We conclude, therefore, that Morton's was not entitled to a copy of the worksheet. See *Ramos v. Local Liquor Control Comm'n*, 67 Ill. App. 3d 340, 344, 384 N.E.2d 912 (1978) (Chicago Local Liquor Control Commission was not required to disclose hearing officer's report where the report would not have proven the plaintiff's assertions).

Based on the foregoing analysis, we affirm the judgment of the

circuit court of Cook County which confirmed the Commission's decision.

Affirmed.

McCULLOUGH, P.J., and CALLUM, HOLDRIDGE, and GOLDENHERSH, JJ., concur.