2017 IL App (1st) 170435WC

Workers' Compensation
Commission Division
Opinion Filed: December 22, 2017

No. 1-17-0435WC

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

| | | |
|---|---|---|
| SYSCO FOOD SERVICE OF CHICAGO, | ) | Appeal from the |
| | ) | Circuit Court of |
| Appellant, | ) | Cook County |
| | ) | |
| v. | ) | Nos.  12 L 51452 |
| | ) | 14 L 50862 |
| THE ILLINOIS WORKERS' COMPENSATION | ) | 14 L 50908 |
| COMMISSION *et al.*, | ) | 16 L 50296 |
| | ) | 16 L 50303 |
| (Michael Donohue, Appellee). | ) | |
| | ) | Honorable |
| | ) | Robert Lopez Cepero and |
| | ) | James M. McGing, |
| | ) | Judges, Presiding. |

JUSTICE HOFFMAN delivered the judgment of the court, with opinion.
Presiding Justice Holdridge and Justices Hudson, Harris, and Overstreet concurred in the judgment and opinion.

## OPINION

¶ 1    Sysco Food Services of Chicago (Sysco) appeals from an order of the circuit court of Cook County which reversed an October 24, 2012, decision of the Illinois Workers' Compensation Commission (Commission), awarding the claimant, Michael Donohue, *inter alia*, permanent partial disability benefits under section 8(d)2 of the Workers' Compensation Act (Act) (820 ILCS 305/8(d)2 (West 2010)) for a torn meniscus in his left knee but denying the

claimant benefits for the degenerative condition of his left knee, and remanded the matter back to the Commission with directions to award the claimant wage differential benefits under section 8(d)1 of the Act (820 ILCS 305/8(d)1 (West 2010)). Sysco also appeals from the Commission's decisions following remand and the circuit court's orders entered following the Commission's decisions on remand. For the reasons which follow, we: reverse the circuit court's order of December 23, 2013, which reversed the Commission's original decision of October 24, 2012; vacate the Commission's decisions of October 28, 2014, and April 15, 2016, entered following remand from the circuit court; vacate the circuit court's orders of August 10, 2015, and February 16, 2017, entered following the Commission's decisions on remand; and reinstate the Commission's original decision of October 24, 2012.

¶ 2    The following factual recitation is taken from the evidence adduced at the arbitration hearing held on September 7, 2011, and November 4, 2011.

¶ 3    At all times relevant, the claimant was employed by Sysco as a delivery driver. His duties included delivering food products to customers by truck and unloading the products from the truck using a two-wheeled dolly and a ramp. The claimant testified that, on November 6, 2009, as he was maneuvering a load of food products inside of his truck, he fell out of the back of the truck and landed on both knees.

¶ 4    On November 12, 2009, the claimant sought medical treatment from Dr. Quinn Regan at the Illinois Bone and Joint institute. Following his examination of the claimant, Dr. Regan diagnosed left knee pain and contusions following a slip and fall.

¶ 5    After again examining the claimant on November 19, 2009, Dr. Regan recorded an impression of very mild joint line narrowing of the left knee, possibly meniscal pathology and possible left knee contusion. Dr. Regan administered a Cortisone shot to the claimant's left knee.

¶ 6    When Dr. Regan examined the claimant's left knee on December 7, 2009, he noted no effusion and a range of motion from 0 to 135 degrees. He again administered a Cortisone shot to the claimant's left knee and recommended that the claimant have an MRI scan of his left knee.

¶ 7    The claimant underwent the recommended MRI on December 28, 2009. The scan revealed bone marrow edema of the medial aspect of the femoral condyle and tibial plateau, consistent with a contusion; a tear at the posterior horn of the medial meniscus; small joint effusion; and a soft tissue contusion at the medial aspect of the knee.

¶ 8    Dr. Regan's notes of a visit on January 4, 2010, state that he reviewed the MRI and diagnosed left knee pain and internal derangement, secondary to a meniscal tear and bone bruise. Dr. Regan recommended that the claimant have surgery to repair the meniscal tear.

¶ 9    On January 20, 2010, the claimant underwent surgery to repair the meniscal tear in his left knee. Dr. Regan's postoperative diagnosis was a medial meniscal tear in the posterior horn of the claimant's left knee with chondromalacia of the medial femoral condyle.

¶ 10    When he examined the claimant on January 28, 2010, Dr. Regan noted that the claimant's pain had improved and his surgical wound was progressing nicely. Dr. Regan recorded his intention to see the claimant in about three weeks with a view to returning him to work at that time.

¶ 11    According to the claimant, he remained off of work following surgery until he was given a full duty release by Dr. Regan. He returned to work at Sysco on February 22, 2010.

¶ 12    On March 29, 2010, the claimant presented to Dr. Regan complaining of significant pain in his left knee. On examination, Dr. Regan noted swelling of the claimant's left knee "2+ effusion" and flexion to 90 degrees. Dr. Regan aspirated the claimant's left knee and administered a Celestone shot. As of that visit, Dr. Regan noted his impression of "status post

knee arthroscopy with an effusion for overuse" and authorized the claimant to remain off of work.

¶ 13    When the claimant saw Dr. Regan on April 1, 2010, he reported a flare-up of his left knee symptoms after twisting his knee a week earlier. Dr. Regan recommended that the claimant remain off of work.

¶ 14    When the claimant saw Dr. Regan on April 12, 2010, he complained of left knee pain. On examination of the claimant's left knee, Dr. Regan found no erythema, no redness, no numbness, no effusion, and a range of motion from 0 to 90 degrees. In his notes of that visit, Dr. Regan wrote: "I don't think he can go back to work as a truck driver."

¶ 15    The claimant returned to see Dr. Regan on May 13, 2010, complaining of persistent pain along the medial aspect of his left knee. On examination, Dr. Regan noted no effusion, a range of motion from 0 to 135 degrees, negative Lachman's and anterior drawer, a touch of an Apley grinding test along the medial aspect, and a normal gait. The doctor again noted that the claimant re-twisted his left knee after surgery. Dr. Regan's notes contain his impression that the claimant's ongoing symptoms could be the result of a bone bruise or an aggravation of chondromalacia in the medial femoral condyle. Dr. Regan recommended an MRI and again wrote: "I don't think he can go back to work as a truck driver."

¶ 16    The report of the claimant's second MRI did not reveal a new meniscus tear, but did show a small Baker's cyst. According to Dr. Regan's notes from June 17, 2010, the MRI showed that the claimant's bone edema had resolved; however, the claimant was still experiencing pain and dysfunction. The claimant underwent a series of Orthovisc injections on the recommendation of Dr. Regan.

¶ 17    When the claimant saw Dr. Regan on July 22, 2010, he complained of pain along the medial aspect of his left knee. On examination, Dr. Regan noted no effusion, full range of motion from 0 to 135 degrees, negative Lachman's and anterior drawer, a touch of an Apley grinding test along the medial aspect, and a normal gait. According to the doctor's notes: "[the claimant] needs to go back to work." Dr. Regan recommended that the claimant wear a knee brace while working.

¶ 18    On July 31, 2010, the claimant was examined by Dr. Kevin Walsh at the request of Sysco. In his report dated that same day, Dr. Walsh opined that the claimant was able to return to work without restrictions as a result of his work-related injury. Dr. Walsh noted that the claimant had a degenerative condition of the knees which was not caused by, aggravated or accelerated by his work accident.

¶ 19    On August 5, 2010, Dr. Regan released the claimant to return to work at his regular job with a knee brace. According to the notes of that visit, the claimant felt that he was ready to go back to work.

¶ 20    The claimant returned to work on August 16, 2010, and worked a $11^1/_2$ hour shift. The claimant testified that, at the end of the day, he complained to Rick Leonard, Sysco's safety and security director, that his knee was causing him pain. When the claimant returned to work the following day, he complained of pain and swelling in his left knee. According to the claimant, when he finished training at approximately 7:30 a.m. he was told to report to Debbie Valleskey, Sysco's nurse. However, before he was able to see Valleskey, Leonard told him to go home. Leonard testified that he had been advised that the claimant had been complaining about his knees. Leonard denied that the claimant made any complaints of knee pain to him. He stated that he made the decision to send the claimant home after conferring with his boss, Bill O'Meara.

According to Leonard, in performing his job driving a stick-shift truck, the claimant's knee could give out, causing an accident. Leonard was also concerned that the claimant might injure himself or others going up or down stairs with a two-wheel dolly.

¶ 21    The claimant testified that he received a phone call from Valleskey in the afternoon of August 17, 2010, advising him that he could not return to work due to the condition of his left knee. Valleskey testified that the decision to send the claimant home was made by Leonard and O'Meara. She stated that she was instructed to arrange a "Fit for Duty Test" for the claimant.

¶ 22    When the claimant saw Dr. Regan on September 3, 2010, the doctor noted that the claimant could try to go back to work doing his regular job. On examination, the doctor noted no effusion, a range of motion greater than 135 degrees of flexion, negative Lachman's and anterior drawer, and a normal gait.

¶ 23    The claimant underwent a "Fit for Duty Test" on September 15, 2010. The report of that test states that he was capable of performing dynamic lifts and job specific tasks, but that he has physical limitations which may affect his ability to perform successfully over an entire shift. According to the report, the claimant may need to be transitioned to a full work day or tested for performing job specific tasks for a full day to determine safe functional endurance.

¶ 24    On November 18, 2010, the claimant returned to see Dr. Regan and reported improvement in his left knee symptoms. As of that date, Dr. Regan found that the claimant could function at a reasonable level and could return to his regular duties as a truck driver.

¶ 25    At the request of Sysco, the claimant was examined by Dr. Walsh for a second time on November 23, 2010. In his report of that examination, Dr. Walsh opined that the claimant did not require work restrictions as a result of his work accident, but it would be reasonable to restrict

him from work as a truck driver due to his degenerative knee condition which is unrelated to his work accident.

¶ 26    Sysco did not allow the claimant to return to work as a delivery truck driver, and as a consequence, he filed a grievance with his union, Teamsters Local 710. Charles DeCola, the Business Agent for Local 710, testified that he prepared the grievance for the claimant. According to DeCola, in all of his discussions with Sysco representatives, he was told that the claimant could not return to his duties as a delivery truck driver because of the injuries he sustained while working.

¶ 27    On January 14, 2011, the claimant was summoned to a meeting at Sysco's Human Resource Department. Present at the meeting were Dan Pasquale, the claimant's union steward, and Lee Gersch, Sysco's Human Resource Director. At that meeting, the claimant was given a letter dated January 5, 2011, drafted by Gersch which states "as a result of your work related injuries *** you are not qualified to perform the essential functions of the Delivery Driver position." However, during the arbitration hearing, Gersch stated that she made a mistake in the wording of the letter and that the claimant could not return to work as a delivery driver due to his personal medical condition, not because of a work-related injury. The claimant testified that Gersch offered him a position as a security guard and told him that, if he did not accept that position, his employment would be terminated. According to the claimant, he accepted the position as a security guard, but wrote on the letter he received that he was not waiving his rights under the union grievance. Gersch admitted that the only alternative positions which she could recall Sysco offering were to employees who had sustained work related injuries.

¶ 28    The claimant returned to work at Sysco as a security guard on January 16, 2011. He is required to work 50 hours per week at the rate of $20 per hour for the first 40 hours and $30 per hour for the remaining hours.

¶ 29    At the request of the claimant's attorneys, Dr. Regan authored a letter dated June 7, 2011, in which he stated that the symptoms for which he treated the claimant were the result of some underlying chondromalacia of the medial femoral condyle with a significant bone bruise. According to the letter, the bone bruise is the result of a direct trauma, and not degenerative in nature. Dr. Regan was also of the opinion that the meniscal tear in the claimant's left knee "was probably the result of the jump off the truck[,]" and required surgical intervention. Dr. Regan went on to state: "I believe that the accident caused the meniscal pathology, bone bruise, and probably aggravated a pre-existing chondromalacia." As to whether the claimant's degenerative condition is causally related to his work injury, Dr. Regan wrote: "whether or not degeneration is related to the aging process or [an accident] on the job, I have a more difficult time saying one verses the other. It is easy for me to say the meniscal tear and bone bruise have relationship to the job accident."

¶ 30    During the arbitration hearing on September 7, 2011, the claimant testified that his knee is "as good as it was before the operation. I have no problems with it." He stated that he is pain free and his left knee has not caused him to do anything any less or differently than he did prior to his work accident. During the arbitration hearing on November 4, 2011, the claimant admitted: "I have no restrictions on me from any doctor."

¶ 31    Following a hearing, the arbitrator found that the claimant sustained injuries to his left knee, consisting of a torn meniscus, which arose out of and in the course of his employment with Sysco on November 6, 2008. However, the arbitrator found that the then current degenerative

condition of the claimant's left knee was not causally related to his work accident. The arbitrator fixed the claimant's average weekly wage at $1592.03 and awarded him $41^3/_7$ weeks of temporary total disability (TTD) benefits under section 8(b) of the Act (820 ILCS 305/8(b) (West 2010)) at the rate of $1,061.35 per week for the periods from November 12, 2009, through November 22, 2009; January 4, 2010, through February 22, 2010; May 13, 2010, through August 16, 2010; and August 18, 2010, through January 4, 2011. The arbitrator granted Sysco a credit of $34,827.33 for TTD benefits paid to the claimant. In addition, the arbitrator ordered Sysco to pay $7242.86 for reasonable and necessary medical expenses incurred by the claimant. Finding that the claimant suffered a 30% loss of use of his left leg as the result of his work accident, the arbitrator awarded the claimant $64^1/_2$ weeks of permanent partial disability benefits at the rate of $664.72 per week pursuant to section 8(d)2 of the Act (820 ILCS 305/8(d)2 (West 2010)). Finally, the arbitrator denied the claimant's petition for penalties under sections 19(k) and 19(*l*) of the Act (820 ILCS 305/19(k), (*l*) (West 2010)), and attorney fees under section 16 of the Act (820 ILCS 305/16 (West 2010)).

¶ 32    Both Sysco and the claimant sought a review of the arbitrator's decision before the Commission. In a unanimous decision entered on October 24, 2012, the Commission affirmed and adopted the arbitrator's decision.

¶ 33    The claimant sought judicial review of the Commission's decision in the circuit court of Cook County. On December 23, 2013, the circuit court, Judge Lopez Cepero, reversed the Commission's determination that the degenerative condition of the claimant's left knee is not causally related to his work injury, finding that the Commission's determination in this regard is against the manifest weight of the evidence. According to Judge Lopez Cepero's order, contrary to the Commission's decision, the claimant's treating doctor, Dr. Regan, was not silent on the

issue of a causal relationship between the degenerative condition of the claimant's left knee and his work accident. In his letter of June 7, 2011, Dr. Regan stated that the claimant's work accident "probably aggravated a pre-existing chondromalacia." Judge Lopez Cepero concluded that, because the Commission had not noted Dr. Regan's letter, it ignored it, suggesting that the Commission was "determined to reach a particular outcome." Judge Lopez Cepero remanded the matter back to the Commission "for the sole purpose of calculating *** [the claimant's] wage differential award" under section 8(d)1 of the Act (820 ILCS 305/8(d)1 (West 2010)).

¶ 34    On remand, the Commission issued a decision on October 28, 2014, in which it specifically stated that, in arriving at its original decision, it had "noted, reviewed, considered, analyzed, and weighed" Dr. Regan's letter. The Commission referenced that portion of the letter which states that in terms of commenting on "whether or not degeneration is related to the aging process or [an accident] on the job, I have a more difficult time saying one verses the other. It is easy for me to say the meniscal tear and bone bruise have relationship to the job accident." According to the Commission, these statements did not establish Dr. Regan's belief that a causal nexus exists between the claimant's work accident and the degenerative condition in his left knee. Nevertheless, in compliance with the circuit court's December 23, 2013, order, the Commission found that the degenerative condition of the claimant's left knee is causally related to his work accident and awarded him a wage differential of $394.68 per week, commencing on January 16, 2012.

¶ 35    Both Sysco and the claimant sought a judicial review of the Commission's October 28, 2014, decision in the circuit court. The claimant argued that the Commission incorrectly calculated the wage differential award. Sysco argued both that the Commission's finding of a causal connection between the degenerative condition of the claimant's left knee and his work

accident and its award of wage differential benefits are against the manifest weight of the evidence.

¶ 36    On August 10, 2015, the circuit court, Judge James McGing, reversed the Commission's decision of October 28, 2014, finding that the Commission had miscalculated the claimant's wage differential award, and remanded the matter back to the Commission with directions to explain its calculation of the claimant's average weekly wage, explain its calculation of the claimant's earning capacity as of November 4, 2011, and recalculate the claimant's wage differential award.

¶ 37    On April 15, 2016, the Commission issued its decision on remand, again noting that, based upon the circuit court's order of December 23, 2013, it was required to find a causal connection between the degenerative condition of the claimant's left knee and his work accident and award the claimant wage differential benefits. As directed, the Commission explained its calculation of the claimant's average weekly wage on November 6, 2009, of $1592.03, and its calculation of the claimants earning capacity as of November 4, 2011, of $1621.80 per week. The Commission fixed the claimant's wage differential award at $347.51, commencing on January 16, 2011.

¶ 38    Both the claimant and Sysco sought a judicial review of the Commission's decision of April 15, 2016, in the circuit court. On February 16, 2017, the circuit court (Judge McGing) issued an order confirming the Commission's decision. On March 10, 2017, Sysco filed its notice of appeal.

¶ 39    Sysco first argues that the circuit court erred in reversing the Commission's decision of October 24, 2012. Specifically, it argues that, contrary to the circuit court's finding in its order of December 23, 2013, the Commission's determination in its original decision that there is no

causal connection between the degenerative condition of the claimant's left knee and his work accident is not against the manifest weight of the evidence. It also argues that the claimant is not entitled to a wage differential award based upon his admission that he is under no work restrictions and is able to return to work as a truck driver. We agree with both arguments.

¶ 40    When, as in this case, the circuit court reverses the Commission's decision and the Commission, in compliance, issues a new decision on remand, this court's first inquiry on appeal from the circuit court's order confirming the Commission's decision on remand is, whether the circuit court erred in reversing the original decision. *Vogel v. Industrial Comm'n*, 354 Ill. App. 3d 780, 785-86 (2005).

¶ 41    To obtain compensation under the Act, a claimant has the burden of proving, by a preponderance of the evidence, all of the elements of his claim (*O'Dette v. Industrial Comm'n*, 79 Ill. 2d 249, 253 (1980)), including a causal relationship between his work accident and his condition of ill being (*Caterpillar Tractor Co. v. Industrial Comm'n*, 129 Ill. 2d 52, 58 (1989)). Whether a causal connection exists between a claimant work-related accident and his condition of ill being is a question of fact to be resolved by the Commission. *Certi-Serve Inc. v. Industrial Comm'n*, 101 Ill. 2d 236, 244 (1984). Whether a claimant's condition of ill being is attributable solely to a degenerative process of a preexisting condition or to an aggravation or acceleration of that preexisting condition caused by a work-related accident is a factual determination to be made by the Commission. *Sisbro, Inc. v. Industrial Comm'n*, 207 Ill. 2d 193, 204-05 (2003).

¶ 42    The Commission's finding on a question of fact will not be disturbed on review unless it is against the manifest weight of the evidence. *Orsini v. Industrial Comm'n*, 117 Ill. 2d 38, 44 (1987). For a factual finding made by the Commission to be against the manifest weight of the evidence, an opposite conclusion must be clearly apparent. *City of Springfield v. Illinois*

*Workers' Compensation Comm'n*, 388 Ill. App. 3d 297, 315 (2009). Whether a reviewing court might have reached the same conclusion is not the test for determining whether the Commission's finding is against the manifest weight of the evidence. Rather, the appropriate test is whether there is sufficient evidence in the record to support the Commission's decision. *Benson v. Industrial Comm'n*, 91 Ill. 2d 445, 450 (1982).

¶ 43    In its original decision, the Commission affirmed and adopted the arbitrator's decision in its entirety. Based in large part on the opinions of Dr. Walsh, the Commission found that the permanent injury causally related to the claimant's work injury is the torn meniscus surgically repaired by Dr. Regan on January 20, 2010. However, according to the decision, there is no evidence to support a finding that the degenerative condition of the claimant's left knee is causally related to his work injury. In reversing the Commission's original decision, the circuit court (Judge Lopez Cepero), found that the Commission's causation determination relating to the degenerative condition is belied by the statement in Dr. Regan's June 7, 2011, letter that the claimant's work accident "probably aggravated a pre-existing chondromalacia." The circuit court concluded that the Commission ignored Dr. Regan's letter, suggesting that the Commission was "determined to reach a particular outcome." After concluding that the Commission had ignored Dr. Regan's letter, the circuit court found that the Commission's determination that the degenerative condition in the claimant's left knee is not causally connected to his work accident is against the manifest weight of the evidence. However, in its October 28, 2014, decision on remand from the circuit court, the Commission specifically stated that, in arriving at its original decision, it had "noted, reviewed, considered, analyzed, and weighed" Dr. Regan's letter. The Commission referenced that portion of the letter which states that, in terms of commenting on "whether or not degeneration is related to the aging process or [an accident] on the job, I have a

more difficult time saying one verses the other. It is easy for me to say the meniscal tear and bone bruise have relationship to the job accident." According to the Commission, these statements did not establish Dr. Regan's belief that a causal nexus exists between the claimant's work accident and the degenerative condition in his left knee.

¶ 44    Both Dr. Regan's records and Dr. Walsh's opinion establish that the claimant suffers from a degenerative condition in his left knee, and the claimant correctly asserts that causation may be based upon a medical expert's opinion that a work accident could or might have caused a condition of ill-being. See *Consolidation Coal Co. v. Industrial Comm'n*, 265 Ill. App. 3d 830, 839 (1994). However, the weight, if any, to be given to such an expert's opinion is a matter for the Commission to decide (*O'Dette*, 79 Ill. 2d at 253), not the circuit court. It is clear from the Commission's decision of October 28, 2014, that, in arriving at its original decision, it considered Dr. Regan's letter of June 7, 2011, but accorded no weight to his statement that the claimant's work accident "probably aggravated a pre-existing chondromalacia." We do not believe that the Commission's failure to make note of the letter in its original decision, standing alone, supports the circuit court's conclusion that the Commission ignored the letter. Nor do we believe that the content of Dr. Regan's letter justified the circuit court in concluding that the Commission's finding that the degenerative condition of the claimant's left knee is not causally related to his work injury is against the manifest weight of the evidence, especially in light of Dr. Walsh's opinion on causation and the claimant's own testimony that his knee "is as good as it was before the operation." In concluding that the causation determination relating to the claimant's degenerative condition contained in the Commission's original decision is against the manifest weight of the evidence, the circuit court impermissibly reweighed the evidence and usurped the Commission's fact-finding function.

¶ 45    In addition to substituting its judgment for that of the Commission on the issue of causation, the circuit court (Judge Lopez Cepero), not only reversed the Commission's original decision, it remanded the matter back to the Commission with directions to award the claimant wage differential benefits under section 8(d)1 of the Act. Sysco argues that, by his own admissions, the claimant is not entitled to a wage differential award. We agree.

¶ 46    The claimant acknowledges in his brief that he is not medically restricted from pursuing his usual and customary line of employment as a truck driver and was willing and able to return to work. Nevertheless, he argues that, despite his full duty release, Sysco's refusal to allow him to return to work as a delivery driver based on its belief that he is physically unfit which renders him partially incapacitated from pursuing his usual and customary line of employment, and entitles him to wage differential benefits as ordered by the circuit court in its December 23, 2013, order. We find no merit in the argument.

¶ 47    Section 8(d)1 of the Act provides that an injured employee is entitled to wage differential benefits if, "as a result" of a work related "accidental injury[,]" he becomes partially incapacitated from pursuing his usual and customary line of employment. 820 ILCS 305/8(d)1 (West 2010). The claimant does not assert that he is partially incapacitated from pursuing his usual and customary line of employment by reason of an injury; rather, he contends that he is entitled to a wage differential due to Sysco's refusal to allow him to return to work as a delivery driver. He admits that he is not medically restricted from working as a delivery driver and was willing and able to return to work in that capacity. Based upon his own admissions, the claimant was not entitled to a wage differential award under section 8(d)1 of the Act.

¶ 48    In reversing the Commission's decision of October 24, 2012, and ordering the Commission to award the claimant wage differential benefits, the circuit court found "that there

is no language in [s]ection 8(d)1 that requires a claimant to be *medically* incapacitated to receive a wage differential award." (Emphasis added.) Relying upon evidence that Sysco declined to allow the claimant to return to work as a delivery driver due to his work-related injuries and thereafter offered him a position as a security guard, the circuit court concluded that the claimant was incapacitated from pursuing his usual and customary line of employment, and is entitled to a wage differential award. The flaw in the circuit court's reasoning was its failure to recognize that, in order to qualify for a wage differential, the claimant must be partially incapacitated from pursuing his usual and customary line of employment "as a result" of an injury, not based on the reasons articulated by his employer for not restoring him to his pre-accident position.

¶ 49    Clearly, the reasons given by an employer for not restoring an injured employee to his pre-accident position may be relevant to the question of whether the employee is incapacitated from pursuing his usual and customary line of employment in a case where the employee's physical ability to return to his usual line of work is a disputed issue. This is not such a case. The claimant admitted that he is ready, willing, and able to return to work as a truck driver, and his treating physician authorized him to return to work without restrictions.

¶ 50    The extent of an injured employee's disability is a question of fact for the Commission to determine (*Oscar Mayer & Co. v. Industrial Comm'n*, 79 Ill. 2d 254, 256 (1980)) as is the issue of whether the employee is partially incapacitated from pursuing his usual and customary line of employment (*Morton's of Chicago v. Industrial Comm'n*, 366 Ill. App. 3d 1056, 1061 (2006)). Simply stated, the evidence in the record before us supports the conclusion that the claimant is not partially incapacitated from pursuing his usual and customary line of employment "as a result" of a work related "accidental injury."

¶ 51    Based upon the foregoing analysis, we conclude that, in reversing the Commission's original decision of October 24, 2012, the circuit court both impermissibly reweighed evidence and misapplied section 8(d)1 of the Act.

¶ 52    Lastly, we find need to comment on a gratuitous statement made by Judge Lopez Cepero in his order of December 23, 2012; a comment with which the Commission justly took umbrage. Judge Lopez Cepero wrote that, "any reasonable trier of fact" would have noted Dr. Regan's letter of June 7, 2011, and weighed it accordingly, and "[t]he fact that the Commission ignored it suggests that they were determined to reach a particular out come." First, the fact that the Commission did not mention the letter in its original decision does not support the conclusion that it ignored the letter. Second, whether or not one agrees with the Commission's causation determination, there was simply no justification for accusing the Commission of being determined to reach a particular outcome in this case, especially in light of the fact that the evidence contained in the record supports the Commission's original causation determination. The accusation is not only without support in the record, it is injudicious.

¶ 53    In summary, we conclude that: (1) the circuit court (Judge Lopez Cepero), usurped the fact-finding function of the Commission in reversing its original decision of October 24, 2012; (2) the record contains sufficient evidence to support the determination in the Commission's original decision that the degenerative condition of the claimant's left knee is not causally related to his work accident of November 6, 2009; (3) the claimant was not entitled to a wage differential under section 8(d)1 of the Act; and (4) the Commission's original decision is not against the manifest weight of the evidence.

¶ 54    Based upon the foregoing analysis, we: reverse the circuit court's order of December 23, 2013; vacate the Commission's decisions of October 28, 2014, and April 15, 2016; vacate the

circuit court's orders of August 10, 2015, and February 16, 2017; and reinstate the Commission's original decision of October 24, 2012.

¶ 55    Judgment of the circuit court of December 23, 2013, reversed; judgment of the circuit court of August 10, 2015, and February 16, 2017, vacated; Commission's decisions of October 28, 2014, and April 15, 2016, vacated; and Commission's original award of October 24, 2012, reinstated.