2020 IL App (3d) 190746WC-U

No. 3-19-0746WC

Order filed October 8, 2020

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed by Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

WORKERS' COMPENSATION COMMISSION DIVISION

| | | |
|---|---|---|
| CITY OF PEORIA, | ) | Appeal from the |
| | ) | Circuit Court of |
| Appellant, | ) | Peoria County. |
| | ) | |
| v. | ) | No. 19-MR-00521 |
| | ) | |
| ILLINOIS WORKERS' COMPENSATION | ) | |
| COMMISSION, *et al*., | ) | Honorable |
| | ) | Mark E. Gilles, |
| (Tangela Taylor, Appellee). | ) | Judge, Presiding. |

JUSTICE BARBERIS delivered the judgment of the court.
Presiding Justice Holdridge and Justices Hoffman, Hudson and Cavanagh concurred in the judgment.

ORDER

¶ 1     *Held*: Because we find that the "future earning capacity" factor under section 8.1b(b)(iv) of the Illinois Workers' Compensation Act (820 ILCS 305/8.1b(b)(iv) (West 2016)) does not require consideration of non-employment related income, we affirm the judgment of the circuit court of Peoria County confirming the Illinois Workers' Compensation

1

Commission's decision to award claimant permanent partial disability benefits, representing a 40% loss of a person as a whole.

¶ 2 This appeal arises from an order of the circuit court of Peoria County confirming a decision of the Illinois Workers' Compensation Commission (Commission) awarding claimant, Tangela Taylor, permanent partial disability (PPD) benefits for her work-related injuries. On appeal, the appellant, City of Peoria (City), argues that the Commission erred in calculating claimant's PPD benefits by failing to consider claimant's non-employment related income. We affirm.

¶ 3                                      I. Background

¶ 4 Claimant filed an application for adjustment of claim pursuant to the Illinois Workers' Compensation Act (Act) (820 ILCS 305/1 *et seq.* (West 2014)) on December 16, 2015, claiming that she had sustained injuries to her right ankle while working as a police officer for the City on December 6, 2015. The following factual recitation was taken from the evidence presented at the subsequent arbitration hearing held in Peoria, Illinois, on October 18, 2018. The only issue submitted for arbitration was the nature and extent of claimant's injuries.

¶ 5 Claimant, who was 46 years old at the time of arbitration, worked for the City from 1999 to 2015 as a full-duty police officer for approximately 16 years. On December 6, 2015, claimant sustained injuries to her head and ankle while attempting to apprehend a fleeing suspect who had run from police custody. While fleeing, the suspect ran to the front driver-side door of an SUV and claimant gave chase. Claimant was halfway in the front driver-side door of the SUV and "all tangled up" with the suspect, when the suspect drove

2

off. Claimant was dragged approximately 50 feet before falling to the pavement and striking her head. When claimant tried to stand, she immediately felt extreme pain to her right leg and ankle. Claimant called for help and was transported by her supervisor to the emergency room at OSF St. Francis Medical Center in Peoria, Illinois, where she was diagnosed with a large frontal hematoma on the left side of her upper head and a right ankle comminuted (three bone fragments) intraarticular distal tibia fracture.

¶ 6 The following day, claimant was examined by Dr. Edward Moody of OSF Occupational Health and Dr. Steven Below of Great Plains Orthopedic (n/k/a OSF Orthopedic). Claimant reported no loss of consciousness, no concussive symptoms and substantial, persistent right ankle pain. X-rays confirmed a comminuted intraarticular distal tibia fracture in claimant's right ankle, and both Drs. Below and Moody agreed with this assessment. A posterior, plaster splint with stirrups was applied. Claimant was restricted from any weightbearing activities and ordered not to return to work.

¶ 7 On December 14, 2015, Dr. Robert Kinzinger, an orthopedic specialist at OSF Orthopedic, performed surgery to repair claimant's right ankle fracture. Following surgery, claimant received three months of work conditioning at the Center for Industrial Rehabilitation, five months of conventional physical therapy and underwent several follow up-visits with Drs. Kinzinger and Moody.

¶ 8 On July 22, 2016, at the City's request, claimant reported to Dr. Anand Vora for a section 12 evaluation (820 ILCS 305/12 (West 2016)). Dr. Vora observed that claimant had mild limitation of motion in the ankle, slight atrophy in the right calf, slight swelling in the right ankle and pain on palpation. Even though Dr. Vora opined that claimant's

subjective complaints exceeded his objective findings, Dr. Vora concluded that claimant was unable to perform the full duties of a police officer. Dr. Vora believed, however, that claimant's condition could improve with further treatment.

¶ 9 Between July and August 2016, claimant underwent three separate independent medical examinations in preparation for a hearing before the Peoria Police Pension Board. All three independent examining doctors, Drs. James Boscardin, David Anderson and Edward Kolb, found her unable to perform the full duties of a police officer. In addition, all three doctors agreed that it was unlikely that she could improve enough with future treatment, including removal of the implanted surgical hardware from the first surgery, to return to work as a police officer.

¶ 10 On August 1, 2016, claimant returned to work with restrictions. These restrictions included light-duty, sedentary work with no confrontational situations or tactical training, no running or jumping, a 15-minute per hour maximum of required standing and walking, maximum lift of 15 pounds, and positional changes as needed for comfort.

¶ 11 On January 9, 2017, claimant presented to Dr. Kinzinger for a follow-up examination. At that time, claimant had limited range of motion in her ankle and pain on palpation. Dr. Kinzinger placed claimant on permanent work restrictions to avoid police activities, such as running, jumping, being in altercations or significant lifting, and to participate in weight bearing activities of daily living, as tolerated. Dr. Kinzinger also recommended a follow-up surgery approximately six months later to remove the implanted surgical hardware. Claimant remained on restricted, light-duty work until January 14, 2017.

¶ 12    On January 11, 2017, claimant, again, presented to Dr. Moody, who opined that it was unlikely that claimant would regain the functional capacity to return to work as a police officer. Dr. Moody placed claimant on permanent work restrictions to avoid lifting over 15 pounds and confrontations or tactical training, such as running or jumping, as well as tolerating positional changes as needed. Due to claimant's permanent restrictions, her employment as a police officer with the City ended on May 26, 2017.

¶ 13    On September 15, 2017, Dr. Kinzinger performed a second surgery on claimant by to remove the implanted surgical hardware. Claimant later reported that her ankle improved following the second surgery.

¶ 14    On September 20, 2017, claimant was awarded a line-of-duty disability pension, pursuant to section 3-114.1(a) of the Illinois Pension Code (Code) (40 ILCS 5/3-114.1(a) (West 2014)), resulting in annual tax-free disability pension benefits of $61,701.24, representing 65% of her annual salary. In addition, at age 60, claimant's pension was set to increase to $89,466.84, with a 3% annual increase thereafter. Claimant's disability pension was not subject to a reduction based on outside income, but her eligibility for line-of-duty disability pension benefits would be reviewed on an annual basis by an independent physician.

¶ 15    On November 2, 2017, Dr. Kinzinger conducted a final examination of claimant. Dr. Kinzinger noted that claimant showed limitation in dorsiflexion and plantar flexion of the right ankle. Even though claimant was "a lot better," claimant reported ongoing tingling and tenderness at that time. Dr. Kinzinger recommended weight bearing activities, as tolerated.

¶ 16 On December 8, 2017, claimant was examined by Dr. Henry San German, her primary care physician. Claimant reported that her right ankle pain had significantly improved. Dr. San German diagnosed claimant with chronic right ankle pain but noted gradual improvement.

¶ 17 At the time of the arbitration hearing, claimant was no longer working in law enforcement but had acquired limited monthly income of approximately $100 per month as an independent contractor selling Mary Kay cosmetics. According to claimant, she took arthritis medication to ease her right ankle pain, which never completely subsided. Claimant's health insurance was primarily covered through the Public Safety Employee Benefits Act (PSEBA) (820 ILCS 320/1 *et seq.* (West 2016)), which requires, *inter alia*, that the City pay claimant's basic health insurance premiums for life.

¶ 18 The arbitrator issued a written decision on December 4, 2018, finding that claimant had sustained a PPD to the extent of 40% loss of use of her person as a whole, pursuant to section 8(d)(2) of the Act (820 ILCS 305/(d)(2) (West 2016). The arbitrator, after reviewing the record and considering the five statutory factors governing PPD determinations (see 820 ILCS 305/8.1b(b)(i-v)(West 2016)), awarded claimant 200 weeks of PPD benefits, at a rate of $755.22 per week, totaling $151,044. In doing so, the arbitrator rejected the City's argument that claimant's person-as-a-whole award should be reduced based on her line-of-duty disability pension (40 ILCS 5/3-114.1(a) (West 2016)) and PSEBA (820 ILCS 320/1 *et seq.* (West 2016)) benefits (basic lifetime health insurance coverage), which the City claimed constituted future earnings under the future earning

capacity factor. 820 ILCS 305/8.1b(b)(iv) (West 2016). In that regard, the arbitrator expressed the following:

> "[The claimant's] pension benefits are not earnings. *** [T]he [claimant's] entitlement to the benefits is subject to an annual review by a doctor of their choosing. In other words, her ability to receive those benefits is out of her control. They do not impact her future earning capacity."

¶ 19 On December 10, 2018, the City sought review of the arbitrator's decision before the Commission. The Commission unanimously adopted and affirmed the arbitrator's decision on June 12, 2019.

¶ 20 On June 28, 2019, the City sought judicial review of the Commission's decision in the circuit court of Peoria County. The court subsequently affirmed the Commission's decision, finding that the Commission's decision was not against the manifest weight of the evidence. This appeal followed.

¶ 21                                     II. Analysis

¶ 22 On appeal, the City does not dispute that claimant is entitled to an award of PPD benefits under section 8(d)(2) of the Act (820 ILCS 305/8(d)(2) (West 2016)). The City, instead, contends that the Commission erred, as a matter of law, in determining the level of PPD based on its interpretation of the future earning capacity factor under section 8.1b(b)(iv) of the Act (820 ILCS 305/8.1b(b)(iv) (West 2016)) to exclude consideration of claimant's statutory benefits. Contrary to the Commission's decision, the City argues that claimant's line-of-duty disability pension and PSEBA benefits substantially increase her future earning capacity under section 8.1b(b)(iv) of the Act. For that reason, the City urges this court to reverse the Commission's PPD award and remand with direction that the

7

Commission consider claimant's statutory benefits in relation to the level of claimant's PPD. Alternatively, the City requests this court vacate the Commission's PPD award, and, based on claimant's statutory benefits, enter a lesser award representing a 20% loss of a person as a whole under section 8(d)(2) of the Act (820 ILCS 305/(d)(2) (West 2016)).

¶ 23    "Generally, a determination of the nature and extent of a claimant's permanent disability is a question of fact to be resolved by the Commission, and its finding in this regard should be given substantial deference and will not be disturbed on appeal unless it is against the manifest weight of the evidence." *Baumgardner v. Illinois Workers' Compensation Comm'n*, 409 Ill. App. 3d 274, 278-79 (2011). However, a legal question involving the construction of a statute presents an issue that we review *de novo. Cassens Transport Co. v. Industrial Comm'n,* 218 Ill. 2d 519, 524 (2006).

¶ 24    In the present case, the issue is whether the Commission, in affirming and adopting the arbitrator's decision, erred in interpreting the term "earning capacity" under subsection 8.1b(b)(iv) of the Act to exclude consideration of claimant's statutory benefits. Because the issue relates to the Commission's interpretation of the Act, our review is *de novo*. See *PPG Industries v. Illinois Workers' Compensation Comm'n*, 2014 IL App (4th) 130698WC, ¶ 14 (where the Commission interprets provisions of the Act, we will apply *de novo* review).

¶ 25    "The primary rule of statutory construction is to ascertain and give effect to the intent of the legislature." *Gruszeczka v. Illinois Workers' Compensation Comm'n,* 2013 IL 114212, ¶ 12. "Words and phrases must not be viewed in isolation but must be considered in light of other relevant provisions of the statute." *Gruszeczka,* 2013 IL 114212, ¶

8

12. "[W]here the statutory language is clear, it will be given effect without resort to other aids for construction." *Id. ¶* 12.

¶ 26    Section 8(d) of the Act provides for two distinct types of PPD awards. *Gallianetti v. Industrial Comm'n*, 315 Ill. App. 3d 721, 727 (2000). Under section 8(d)(1) of the Act, to qualify for wage differential benefits, a claimant must prove (1) a partial incapacity that prevents him from pursuing his usual and customary line of employment and (2) an impairment in the wages he earns or is able to earn in some suitable employment or business after the accident. 820 ILCS 305/8(d)(1) (West 2016). Whereas, section 8(d)(2) of the Act provides for a PPD award based on a percentage-of-the-person-as-a-whole. 820 ILCS 305/8(d)(2) (West 2016).

¶ 27    A percentage-of-the-person-as-a-whole award is appropriate in three circumstances: (1) when a claimant's injuries do not prevent him from pursuing the duties of his employment, but he is disabled from pursuing other occupations or is otherwise physically impaired; (2) when a claimant's injuries partially incapacitate him from pursuing the duties of his usual and customary line of employment but do not result in an impairment of earning capacity; or (3) when a claimant, having suffered an impairment of earning capacity, elects to waive his right to recover under section 8(d)(1). 820 ILCS 305/8(d)(2) (West 2016); *Jackson Park Hospital v. Illinois Workers' Compensation Comm'n*, 2016 IL App (1st) 142431WC, ¶¶ 41-42. Moreover, in relation to impairment of earning capacity, many cases have construed section 8 to hold that "the Commission should require proof of the actual earnings of the employee for a substantial period before the accident" and, when a claimant does not return to work, the Commission should require proof of what "[the

9

claimant] is able to earn *in some suitable employment.*" (Emphasis added.) *Franklin County Coal Corp., v Industrial Comm'n*, 398 Ill. 528, 531 (1947).

¶ 28    In determining the level of PPD, section 8.1b(b) of the Act requires the Commission to base its determination on five factors and state the degree of relevance and weight attributed to each factor. 820 ILCS 305/8.1b(b) (West 2016). Specifically, because the injury in this case occurred after September 1, 2011, the Commission was required to base its PPD determination on the following factors: (i) the reported level of impairment pursuant to AMA guidelines; (ii) claimant's occupation; (iii) claimant's age at the time of injury; (iv) claimant's future earning capacity; and (v) evidence of disability, corroborated by the treating medical records. 820 ILCS 305/8.1b(b)(i-v) (West 2016). Section 8.1b(b) also expressly provides "[n]o single enumerated factor shall be the sole determinant of disability." *Id.;* see also *Gruszeczka,* 2013 IL 114212, ¶ 12.

¶ 29    Here, the City challenges the Commission's construction of the fourth factor— claimant's future earning capacity. While we believe that this statutory language is clear, we find *Jackson Park Hospital,* 2016 IL App (1st) 142431WC informative in construing the future earning capacity factor in the context of a PPD award. In construing section 8(d)(1) versus section 8(d)(2) in *Jackson Park Hospital*, we found that the crucial issue presented "in determining which type of PPD award is appropriate" was whether the claimant's work-related injuries resulted in an "impairment of earning capacity." 2016 IL App (1st) 142431WC, ¶¶ 42-43. Similar to claimant in the present case, the claimant in *Jackson Park Hospital* could no longer perform the same job duties following a work-related accident. *Id.* ¶ 1. The employer, to accommodate the claimant, changed the

claimant's position from stationary engineer to that of a public safety officer, and paid her the same wage she earned prior to the injury. *Id.* ¶ 3. As a result, the Commission concluded that the claimant was not entitled to a wage differential award because she had not suffered any wage loss. *Id.*

¶ 30    In vacating the Commission's PPD award, we stated:

"The supreme court has held that '[a]lthough wages are indicative of earning capacity, they are not necessarily dispositive.' (Citation). The test does not focus exclusively on the amount earned, but instead focuses on the *capacity* to earn. (Citation). '[P]ost-injury earnings and earning capacity are not synonymous' because other evidence can show that 'the actual earnings do not fairly reflect claimant's capacity.' (Citation). For example, '[w]ages paid an injured employee out of sympathy, or in consideration of long service with the employer, clearly do not reflect his or her actual earning capacity *** and should be discounted accordingly.' (Citation)." (Emphasis in original.) *Id.* ¶ 44 (quoting *Cassens Transport Co.,* 218 Ill.2d at 531; 4 A. Larson & L. Larson, *Larson's Workers' Compensation Law* §§ 81.03[1], 81.06 (2005)).

Accordingly, we vacated the Commission's PPD award, finding that "[t]he analysis requires consideration of other factors, including the nature of the post-injury employment in comparison to wages the claimant can earn in *a competitive job market.*" (Emphasis added.) *Jackson Park Hospital*, 2016 IL App (1st) 142431WC, ¶¶ 45.

¶ 31    Consistent with our reasoning in *Jackson Park Hospital,* we find, as did the Commission, that the "future earning capacity" factor under section 8.1b(b)(iv) of the Act does not require consideration of non-employment related income, such as line-of-duty

disability pension or PSEBA benefits. In other words, claimant's statutory benefits have no bearing on her future earning capacity *in some suitable employment in a competitive job market*. As such, we reject the City's argument that claimant's statutory benefits substantially increase her future earning capacity under section 8.1b(b)(iv) of the Act. Having found no error in the Commission's interpretation of the Act, we now consider the City's argument that the Commission's award of PPD benefits representing 40% of a person as a whole is against the manifest weight of the evidence.

¶ 32    The nature and extent of an injured employee's disability is a question of fact to be resolved by the Commission. *Sysco Food Services of Chicago v. Illinois Workers' Compensation Comm'n*, 2017 IL App (1st) 170435WC, ¶ 50. Because of the Commission's expertise, its findings as to the nature and extent of disability should be given substantial deference. *Continental Tire of America, LLC v. Illinois Workers' Compensation Comm'n*, 2015 IL App (5th) 140445WC, ¶ 20.

¶ 33    The issue of whether the employee is incapacitated from pursuing his usual and customary employment as the result of an employment related injury is a question of fact to be resolved by the Commission. *Sysco Food Services of Chicago,* 2017 IL App (1st) 170435WC, ¶ 50. A finding of fact is against the manifest weight of the evidence only where the opposite conclusion is clearly apparent. *Beelman Trucking v. Illinois Workers' Compensation Comm'n*, 233 Ill. 2d 364, 370 (2009). "The relevant inquiry is whether the evidence is sufficient to support the Commission's finding, not whether this court or any other might reach an opposite conclusion." *Westin Hotel v. Industrial Comm'n*, 372 Ill. App. 3d 527, 538-39 (2007).

¶ 34    Here, the Commission, in affirming and adopting the arbitrator's decision, concluded that claimant's injuries partially incapacitated her from performing the duties of her usual and customary line of employment. In reaching this conclusion, the Commission stated the degree of relevance and weight it attributed to each enumerated factor under section 8.1b(b) of the Act. 820 ILCS 350/8.1b(b) (West 2016). The Commission, noting that neither party submitted an impairment rating, did not consider the first factor but gave "considerable" or "significant" weight to the remaining four factors.

¶ 35    In addressing the second and third factors, the Commission noted that claimant, who was 43 years old at the time of her injury, could not return to her pre-injury employment as a police officer, due to her injuries and required permanent work restrictions. The Commission also found that, although claimant's occupation had changed, she continued to live in pain as a result of her injuries, and she would suffer from pain and arthritis for "a long period."

¶ 36    Turning to the fourth factor, the Commission found that the evidence supported a finding that claimant would have loss of earning capacity. The Commission considered that claimant was permanently restricted and unable to return to work in her regular profession as a police officer. Given the claimant's age and occupational base, the Commission further found that claimant had limited career choices available to her.

¶ 37    The Commission also reviewed the claimant's statutory benefits, finding properly that the benefits were not earnings and had no impact on claimant's earning capacity. The Commission emphasized that section 8(d)(2) of the Act did not require a loss of earning capacity to receive an award and noted that the City had failed to support its argument with

13

citation to authority. Moreover, contrary to the City's argument that the benefits provided claimant with guaranteed income to eliminate any loss of her future earning capacity, the Commission specifically noted that the benefits were subject to an annual review by an independent physician and, thus, claimant's ability to continue to receive benefits was out of her control.

¶ 38 Lastly, the Commission considered the fifth factor, finding that the medical evidence substantiated claimant's permanent work restrictions. The Commission noted that the claimant had sustained three fractures to her ankle requiring two surgeries. As a result of her injuries, the claimant had to change occupations and personal activities.

¶ 39 Although the City challenges some of the Commission's factual findings, it primarily restates its argument that claimant's statutory benefits are employment-related income for the purposes of determining PPD benefits—an argument we rejected in our earlier analysis. The record demonstrates that the evidence adduced at the arbitration hearing, which included claimant's testimony, Dr. Kinzinger's deposition, voluminous medical records and treatment notes, was more than sufficient to support the Commission's PPD award for a 40% loss of a person as a whole. We find nothing in the record that would allow this court to disturb the Commission's determination that the injury to claimant's right ankle caused a 40% permanent and partial loss of the person as a whole.

¶ 40 In light of the foregoing, and mindful of our manifest weight standard of review, we cannot say that the opposite conclusion is clearly apparent regarding the Commission's PPD determination. Based upon the record in this case, we conclude that the Commission's

award of PPD benefits for a 40% loss of use of a person as a whole is not against the manifest weight of the evidence.

¶ 41                                    III. Conclusion

¶ 42    For the forgoing reasons, we affirm the judgment of the circuit court of Peoria County confirming the Commission's decision to award claimant PPD benefits representing a 40% loss of a person as a whole.


¶ 43    Affirmed.